WENTWORTH, Judge.
Appellant Boutwell appeals his conviction pursuant to a jury verdict on charges of first-degree murder and possession of a firearm during the commission of a felony, and sentences to consecutive terms of life and 15 years incarceration. He contends the trial court erred in failing to conduct an inquiry into the possibility of a conflict of interest as to counsel’s representation of both a state witness and appellant; that such representation denied him his Sixth Amendment right to effective assistance of counsel; and that the prosecutor improperly commented on appellant’s silence in violation of his Fifth Amendment rights. We affirm.
Appellant was charged by indictment on September 30, 1986 with first-degree mur *1093 der, in violation of section 782.04, Florida Statutes, and possession of a firearm during commission of a felony, in violation of section 790.07(2), Florida Statutes. The trial court appointed counsel, who filed a motion in limine to prohibit the state from referring to or eliciting any testimony regarding his representation of Reuben Terrell Lewis in an unrelated case involving an armed robbery charge. Lewis was listed as a state witness in appellant’s case, and was expected to provide an alibi for Melvin Lindsey, who, the defense was to argue, actually committed the murder. The trial court ordered that no mention be made of counsel’s representation of Lewis in opening statements, and “before the questions be addressed at trial, that we would consider the matter based upon what has transpired at that point.”
The evidence established that the victim, Daryl James Gadson, was killed August 29, 1986 by a single shot fired from inside an automobile owned by appellant while Gad-son was standing in front of a nightclub talking with Steve Green. Eyewitnesses were unable to see who fired the shot because the vehicle had tinted windows and it was dark at the time of the shooting. Green testified that immediately after the shot he heard a voice from inside the automobile say, “I’m going to kill you,” followed by an obscenity, and recognized the voice as appellant’s. Green, however, had told police earlier that he recognized the voice as that of Melvin Lindsey.
Appellant’s girlfriend, Roxie Williams, testified that appellant had heavily armed himself the afternoon before the shooting and had stated that he was going to have to shoot Green. She stated that appellant tried to get Melvin Lindsey, his cousin, to kill Green, but Lindsey refused. She testified that appellant showed up twice the night of the shooting at a band rehearsal she attended, initially telling her that he had shot Green and later telling her that he had tried to shoot Green, but had missed and shot someone else. Artice Stromas corroborated Williams’ testimony, stating that Williams was at his residence for a band rehearsal the night of the shooting, and that she had talked to a visitor and then told Stromas that appellant had shot someone. Testimony also was presented that a search of appellant’s mobile home yielded a .22 caliber pistol that could have been the murder weapon. Mary Rials testified she saw appellant the night of the crime and heard him say he had “hurt three people.” She also testified that she saw appellant with a weapon in his possession the night of the crime, and saw him fire shots into his car window to gain access after locking his keys inside. Testimony was presented regarding two taped statements appellant gave to police. The statements were played for the jury. In the first, appellant stated he was in New Orleans the night of the crime. In the second, appellant stated he told police that he had paid an unnamed person $300 to kill Green, but that person accidentally killed someone else. At the close of the second statement, appellant also said “[sjomebody needs to do something about that boy Steve Green, before he makes somebody, you know, hurt somebody else, and get in all kinds of trouble, because he keeps doin’ folks life_”
The defense assertion that Melvin Lindsey committed the murder was supported by Green’s statement to police that he identified the voice coming from the perpetrator’s car as Lindsey’s. Three other witnesses testified that hard feelings existed between Lindsey and Green, and that Green had tried to have Lindsey arrested on the afternoon prior to the shooting. Lindsey testified, but the defense did not question him as to his whereabouts the evening of the shooting. Neither Lewis nor appellant testified.
During closing argument the prosecutor stated, “I haven’t heard a single witness take that stand that knows anything about what happened that night. I didn’t hear the defendant in his recorded statement in either one. ...” Defense counsel at this point moved for a mistrial on grounds that the state had improperly commented on the defendant’s failure to testify. The court denied the motion and the jury found appellant guilty as charged.
*1094 Appellant’s motion in limine, supra, was not in terms or content sufficient to call to the attention of the trial court the conflict of interest issue argued here. The motion alleged only that the fact of defense counsel’s representation of both appellant and the state witness Lewis had no relevance, and that any mention of the dual representation would tend only to confuse the jury. At the hearing on the motion, defense counsel further argued that the dual representation was immaterial to appellant’s case. Counsel argued only that if he attempted to impeach Lewis by reference to a plea offer in Lewis’ case as Lewis’ true motivation for testifying in appellant’s case, and the state responded by eliciting testimony from Lewis as to defense counsel’s representation of him, the jury would have cause to question defense counsel’s sincerity in representing appellant. The trial court granted the motion in part, directing that no mention of the dual representation be made during opening statements, or prior to addressing the relevance of such testimony during the trial. The hearing on the motion in limine could not fairly be characterized as an inquiry into the conflict of interest in view of defense counsel’s assertion that the fact of his dual representation was immaterial to appellant’s case.
In Jefferson v. State, 440 So.2d 20 (Fla.1st DCA 1983), defense counsel, who represented two codefendants, simply objected to consolidation of the defendants’ cases. The court found the objection was insufficient to trigger the rule in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), requiring an inquiry when the possibility of a conflict of interest is “brought home” to the trial court. “When the trial court is not on notice of a possible conflict, a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer’s performance.” Jefferson, at p. 23, citing Cuyler v. Sullivan, 446 U.S. 385, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), 100 S.Ct. at p. 1719. Here, appellant asserts that defense counsel’s performance was hampered by his fear that the state would elicit testimony from Lewis regarding the dual representation.
At trial, defense counsel chose not to question Lindsey as to his whereabouts the night of the crime. The state, therefore, did not call Lewis.
The record does not reflect, and appellant does not argue, that defense counsel advised Lewis to testify for the state at appellant’s trial in exchange for a plea offer in his own case. If defense counsel had done so, the circumstances of this case might present a more compelling example of “the sacrifice of the interests of one client for the enhancement of the interests of the other.” Davis v. State, 461 So.2d 291 (Fla. 1st DCA 1985). In the absence of that fact the assertion that defense counsel limited his examination of Lindsey because of his fear that Lewis would be called as a corroborating alibi witness, and might divulge the dual representation, appears to be insufficient to constitute the actual conflict of interest required to establish that counsel’s performance was adversely affected. Defense counsel was not torn between the interests of his two clients, although the interests of the two may be seen as indirectly adverse if Lewis, in fact, was motivated to testify on Lindsey’s behalf in exchange for a plea offer. The record does not establish this. Appellant asserts that defense counsel limited examination of Lindsey to protect appellant from the potential impact of Lewis’ testimony if he revealed the dual representation, not to protect Lewis’ interests. Defense counsel’s representation of appellant therefore did not impact Lewis in any way either in appellant’s case or his own case. Lewis was not expected to testify that appellant committed the crime, only that Lindsey was with him the night of the crime. This case is unlike Glosser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942), for example, in which defense counsel, who represented two codefendants, chose not to cross-examine a prosecution witness whose testimony linked defendant Glasser with the crime, and failed to object to arguably inadmissible evidence. The court found those actions resulted from counsel’s desire *1095 to diminish the jury’s perception of the codefendant’s guilt. In Foster v. State, 387 So.2d 344 (Fla. 1980), the court found that the defendant was denied effective assistance of counsel by the joint representation of appellant and a state witness. In that case, however, the state witness was also a codefendant charged with the same crimes as the appellant, her testimony was directly damaging to the appellant, and the state nolle prossed the charges against her after she testified.
The context of the prosecutor’s statement challenged by appellant was as follows:
MR. PATTERSON: ... [I]n fact, we don’t have Kenny Boutwell’s fingerprints in his car. Well, I haven’t heard a single witness take that stand that knows anything about what happened that night. I didn’t hear the defendant in his recorded statement in either one—
MR. KIMMEL: Need to approach the bench, your Honor ... Motion for mistrial for improper comment to defendant’s failure to testify. I have not heard a single witness testif[y] as to what happened inside that car. The very next sentence out of his mouth was reference to the defendant’s statement on a tape recording. There is no logical way to connect these two statements other than tying it to the defendant not taking the witness stand.
THE COURT: Motion will be denied ... You may proceed, Mr. Patterson.
MR. PATTERSON: All of the evidence indicates that the defendant was in that car. So what? There are no fingerprints. There’s no dispute. That’s a ghost of an issue.
Appellant relies upon the rule that “any comment on, or which is fairly susceptible of being interpreted as referring to, a defendant’s failure to testify is error and is strongly discouraged.” State v. Marshall, 476 So.2d 150 (Fla.1985). Such a comment, however, “should be evaluated according to the harmless error rule, with the state having the burden of showing the comment to have been harmless beyond a reasonable doubt. Only if the state fails to carry this burden should an appellate court reverse an otherwise, valid conviction.” Marshall at p. 153. “The harmless error test ... places the burden on the state ... to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict, or, ... that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Here, appellee asserts that the prosecutor’s mention of appellant’s two statements was in the context of the fact that appellant’s fingerprints were not found in his car, but that appellant had admitted in both statements that he was in the car the night of the crime. In view of that context, and the numerous other references made by both the defense and the state in their closing arguments to appellant’s taped statement, the reference does not appear to be fairly susceptible of interpretation as a comment on appellant’s failure to testify.
In addition, although the state does not set forth facts to show that in any event the comment constituted harmless error, such facts are evident in the record. The evidence against appellant, as briefly set forth above, was very strong. In view of that evidence, there was no reasonable probability that the error contributed to the conviction.
AFFIRMED.
ERVIN and BOOTH, JJ., concur.